**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| HAWK TECHNOLOGY SYSTEMS, LLC,  ) | |
|                         ) | |
|       Plaintiff,        ) | |
|                         )      Case No. 2:20-cv-2766-JPM-tmp | |
| v.                   ) | |
|                         ) | |
| CASTLE RETAIL, LLC,      ) | |
|                         ) | |
|       Defendant.    ) | |

**ORDER GRANTING DEFENDANT CASTLE RETAIL, LLC'S MOTION FOR
ATTORNEY FEES**

Before the Court is Defendant Castle Retail, LLC's ("Defendant" or "Castle") Motion for Attorney Fees (ECF No. 65) and accompanying Memorandum in Support (ECF No. 64), filed on April 26, 2023. (ECF No. 65.) Defendant seeks attorney fees from both Plaintiff Hawk Technology Systems, LLC ("Plaintiff" or "Hawk") and its counsel. (ECF No. 64 at PageID 440.)

For each of the reasons set forth below, Defendant's Motion for Attorney Fees is **GRANTED**.

## I.    Background

Plaintiff Hawk Technology Systems, LLC ("Hawk") filed the Complaint against Castle Retail, LLC ("Castle") in the instant case on October 20, 2020. (ECF No. 1.) Hawk alleged that Castle infringed United States Patent No. 10,499,091 (the '091 patent). (Id. at PageID 1.) The '091 patent is a patent for a remote video surveillance system. (Id. at PageID 3–5.)

The Court dismissed the instant case on September 15, 2021.  (ECF No. 44; see also

Hawk Tech. Sys., LLC v. Castle Retail, LLC, No. 220CV02766JPMTMP, 2021 WL 5832793

(W.D. Tenn. Sept. 15, 2021).)  Plaintiff appealed the dismissal on October 14, 2021.  (ECF

No. 49.)  The United States Court of Appeals for the Federal Circuit affirmed this Court's

decision on February 17, 2023.  (ECF Nos. 52, 53; see also Hawk Tech. Sys., LLC v. Castle

Retail, LLC, 60 F.4th 1349, 1357 (Fed. Cir. 2023).)

Weide & Miller filed a notice of withdrawal in the instant case on February 23, 2023.

(ECF No. 54.)  Castle filed a notice of objection to the withdrawal of the Weide & Miller

attorneys on February 24, 2023.  (ECF No. 56.)  Castle wrote that it "intend[ed] to request an

award of fees in its favor, jointly and severally against Hawk and its counsel."  (Id. at PageID

377.)

As previously noted, Castle filed the instant Motion for Attorney Fees on April 26,

2023.[1]  (ECF No. 65.)  Castle filed a Memorandum in Support of its Motion for Attorney Fees

on the same day.  (ECF No. 64.)  The instant Motion was accompanied by the following

exhibits: Defendant's contact information (ECF No. 65-2), a blog post from the Electronic

Frontier Foundation (ECF No. 65-3),[2] a blog post from Patent Progress (ECF No. 65-4),[3] a

New York Times article (ECF No. 65-5),[4] a database printout with a list of cases that

---

[1] Castle's Motion for Attorney Fees seeks fees jointly and severally from Plaintiff and all counsel of record. (ECF No. 65.)  In addition to the Weide & Miller attorneys, Allen Gibbs and R. Scott Weide, Hawk is also represented by Frank Dantone of Henderson Dantone.  Jay Johnson of Kizzia Johnson formerly represented Hawk, but he is now deceased.  (ECF No. 89.)  "Counsel for Defendant has confirmed that the pending matters should not involve Mr. Johnson" or his firm.  (Id. at PageID 752.)

[2] Weide & Miller objects to this exhibit's admission on the grounds that it violates Federal Rules of Evidence 402, 403, 702, and 802, as it is "filled with hearsay and lack citations to reliable or authoritative sources."  (ECF No. 82 at PageID 628.)  The same objections are raised as to ECF Nos. 65-4 and 65-5.  As the Court has not considered these exhibits in analyzing the instant Motion, the Court does not find it necessary to rule on their admissibility.

[3] See Supra n. 2.

[4] See Supra n. 2.

Defendant has brought in district court along with data visualizations (ECF No. 65-6), several notices of settlement and notices of dismissal for cases in which Hawk was the plaintiff (ECF Nos. 65-7–10), the Declaration of Mark Vorder-Bruegge, Jr. (ECF No. 65-11), emails that were exchanged between counsel for Hawk and counsel for Castle in the course of settlement negotiations (ECF Nos. 64-1–2), and the Declaration of Justin J. Hasford ("Mr. Hasford") accompanied by a spreadsheet detailing Defendant's counsel's hours billed (ECF No. 64-3).

Weide & Miller filed an Emergency Motion to Stay Defendant's Motion for Attorney Fees on April 28, 2023, arguing that a motion for attorney fees brought jointly and severally against a party and its counsel presented a potential conflict of interest.  (See generally ECF No. 70.)  Castle filed a Response in Opposition on May 1, 2023.  (ECF No. 71.)  The Court granted Weide & Miller's Motion to Stay on that same day.  (ECF No. 72.)  The Court subsequently issued two orders.  The first order found that Weide & Miller's argument had merit and ordered Weide & Miller to retain conflict counsel to cure potential conflict.  (ECF No. 73.)  The second order denied Weide & Miller's Motion to Withdraw.  (ECF No. 74.) The second order also stayed deadlines for filing for 30 days to allow Hawk and its counsel to comply with the Court's order.  (Id. at PageID 569.)

Weide & Miller filed a Response in Opposition to Defendant's Motion for Attorney Fees on June 7, 2023.  (ECF No. 82.)  That Response was accompanied by the following exhibits: the '091 Patent (ECF No. 82-1), the Declaration of Kayla Higdon and the biographical webpage of Stefan A. Ochiana ("Mr. Ochiana"), an associate with Defendant's counsel Finnigan, Henderson, Farabow, Garrett & Dunner LLP ("Finnigan") (ECF No. 82-2), and the "Plaintiff's Motion for Attorney Fees and Costs" along with its attached exhibits from

the case One Two Three, LLC v. Trentham, No. 3:19-cv-442, 2021 WL 6337497 (E.D. Tenn.

Jan. 25, 2021) (ECF No. 82-3).

Henderson Dantone, on its own behalf and on behalf of Hawk, filed a Response in

Opposition to Defendant's Motion for Attorney Fees on June 14, 2023. [5]  (ECF No. 90.)  That

Response was accompanied by the following exhibits: a chart purporting to show the

outcomes of four cases in which "Defendant's Attorney engaged in litigation with the

Plaintiff" (ECF No. 90-1), a case that Defendant cites as "Pragmatus Telecom, LLC v. New

Egg, Inc., United States District Court for the District of Delaware, Cause No. 12-1533 (Fed.

18, 2016)" (ECF No. 90-2), the case WSOU Invs., LLC v. F5 Networks, Inc., No. 2:21-CV-

00126-BJR, 2023 WL 3723679 (W.D. Wash. May 30, 2023) (ECF No. 90-3), and the claim

chart that was previously filed along with the Complaint in the instant case (ECF No. 90-4;

see also ECF No. 1-3.).

Defendant filed a Reply to Henderson Dantone and Hawk's Response in Opposition

(ECF No. 90) on June 21, 2023.  (ECF No. 92.)  Defendant filed a Reply to Weide and

Miller's Response in Opposition on that same day.  (ECF No. 93.)  That reply was

accompanied by the following exhibits: the Supplemental Declaration of Mr. Hasford along

with a spreadsheet detailing Defendant's counsel's hours billed and additional billing

documents, such as invoices and timekeeping summaries, on Finnigan letterhead (ECF No.

---

[5] Weide & Miller filed its Response in Opposition through counsel.  (See generally ECF No. 82.)  Weide &
Miller's counsel does not represent Hawk because Weide & Miller wished to avoid the conflict of interest that
might arise due to their representation of Hawk while Plaintiff sought attorney fees from Plaintiff's counsel as
well as Plaintiff itself.  (See ECF Nos. 73 (ordering Hawk to seek alternative counsel), 74 (explaining the
potential conflict of interest).)  Weide & Miller's memorandum of law contains extensive argumentation on
behalf of Hawk.  (See, e.g., ECF No. 82 at PageID 625 ("Hawk took reasonable litigation positions"); 627
("Hawk did not engage in litigation misconduct by bringing this lawsuit").)  Hawk then declared that it would
"adopt and join in with" Weide & Miller's memorandum.  (ECF No. 90 at PageID 753.)  For that reason, the
Court looks to both Weide & Miller's Response (ECF No. 82) and Hawk's Response (ECF No. 90) in making its
exceptional case fee determination, even though Hawk is only represented by Henderson Dantone for the
purpose of the instant Motion.

93-1), the Declaration of Mark Field, an attorney with Evans Petree PC ("Evans Petree"), the local counsel Defendant hired for the instant case, along with a spreadsheet detailing Defendant's counsel's hours billed and additional billing documents, such as invoices and timekeeping summaries, on Evans Petree letterhead (ECF No. 93-2), the Declaration of Rick James (ECF No. 93-3), the American Intellectual Property Law Association Report of the Economic Survey 2021 (ECF No. 93-4), Finnigan's Letter of Engagement (ECF No. 93-5), a page from Finnigan's website entitled "Patent Agent – Law Student Track" (ECF No. 93-6), and the attorney profile of Mr. Ochiana (ECF No. 93-7).

The Court entered an Order Finding Email Evidence Admissible and Ordering Plaintiff and its Counsel to File Full Email Exchanges on August 23, 2023.  (ECF No. 98.)  In that order, the Court found settlement negotiation emails to be admissible and ordered Plaintiff to file those emails with the Court.  (Id., see also Infra III.1.c.)  Weide & Miller filed responsive emails on August 30, 2023.  (ECF No. 102.)  Plaintiff filed further responsive emails on September 1, 2023.  (ECF No. 105.)

The Court entered an Order to Show Cause, ordering Plaintiff to present to the Court evidence of the prevailing rate billed for support staff within the community on August 23, 2023.  (ECF No. 100.)  Weide & Miller responded to the Show Cause Order on September 6, 2023.  (ECF No. 106.)  That Response was accompanied by the following exhibits: the Declaration of Richard M. Carter ("Mr. Carter") (ECF No. 106-1), the text of several local decisions detailing findings regarding fees for legal support staff (ECF Nos. 106-2–6), and tables from two websites detailing average rates for attorney fees in the community (ECF Nos. 106-7–8).

## II.    Legal Standard

### 1.    Award of Sanctions

35 U.S.C. § 285 ("Section 285") provides the Court with statutory power to "award reasonable attorney fees to the prevailing party" in "exceptional" patent litigation cases.  35 U.S.C. § 285.  The purpose of Section 285 is "to compensate the prevailing party for costs that it would not have incurred but for the conduct of the losing party and is within the sound discretion of the district court."  Campbell v. Spectrum Automation Co., 601 F.2d 246, 251 (6th Cir. 1979); accord Kilopass Tech., Inc. v. Sidense Corp., 738 F.3d 1302, 1313 (Fed. Cir. 2013).  "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 545 (2014).  "[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  Id. at 547.  The standard of proof is preponderance of the evidence.  Id. at 557. Section 285 sanctions may only be assessed only against a party, not counsel.  Phonometrics, Inc. v. ITT Sheraton Corp., 64 F. App'x 219, 222 (Fed. Cir. 2003).

28 U.S.C. § 1927 ("Section 1927") permits an award of excess costs, expenses, and attorneys' fees where "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.  Section 1927 "applies to attorneys, not the parties they represent."  Davis v. Detroit Downtown Dev. Auth., 782 F. App'x 455, 457 (6th Cir. 2019).  "[S]imple inadvertence or negligence that frustrates the trial judge will not support a sanction under

[S]ection 1927." In re Ruben, 825 F.2d 977, 984 (6th Cir. 1987).  To impose Section 1927 sanctions, a court "require[s] a showing of something less than subjective bad faith, but something more than negligence or incompetence."  Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d 642, 646 (6th Cir. 2006).

A "court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct is tantamount to bad faith."  Metz v. Unizan Bank, 655 F.3d 485, 487 (6th Cir. 2011).

### 2.   Calculation of Reasonable Attorney Fees

Attorney fees should be awarded based on "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which has become known as the "lodestar analysis."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Reed v. Rhodes, 179 F.3d 453, 456 (6th Cir. 1999) (explaining that a "reasonable fee is one that is adequate to attract competent counsel, but does not produce windfalls to attorneys").  Generally, the reasonableness of the rates corresponds to the prevailing rates in the relevant community and focuses on the experience, training, and background of the individual attorneys, and is "defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004) (citations omitted).  There is an exception to this general rule when a case merits the use of an "out-of-town-specialist."  Hadix v. Johnson, 65 F.3d 532, 535 (6th Cir. 1995).

Prior to any award of fees, "a district court must conclude that the fee applicant has sufficiently documented his time and hourly rate."  Keener v. Dep't of Army, 136 F.R.D. 140, 146 (M.D. Tenn. 1991).  The proof submitted "must be detailed enough for a district court to determine with a high degree of certainty that the time claimed was actually and reasonably

spent."  Id. at 147.  The Federal Circuit has explained that "a district court itself has

experience in determining what are reasonable hours and reasonable fees," and can "rely on

that experience and knowledge" in the determination of a fee award.  Slimfold Mfg. Co. v.

Kinkead Indus., Inc., 932 F.2d 1453, 1459 (Fed. Cir. 1991).

### III.   Analysis

#### 1.   *Exceptional Case Attorney Fees*

"[A] case presenting either subjective bad faith or exceptionally meritless claims may

sufficiently set itself apart from mine-run cases to warrant a fee award."  Octane Fitness, 572

U.S. at 555.  The court may consider "frivolousness, motivation, [and] objective

unreasonableness (both in the factual and legal components of the case)," among other factors,

in determining whether an action merits an exceptional case determination.  Id. at PageID 554

n. 6.  A case may be exceptional if its plaintiffs intend to "exploit[] the high cost to defend

complex litigation" to extract "nuisance value settlement[s]" from defendants.  Eon-Net v.

Flagstar Bancorp, 653 F.3d 1314, 1326-27 (Fed. Cir. 2011).  Defendant has presented some

indicia of bad faith conduct on the part of Plaintiff during settlement negotiations.  Weightier,

however, is Plaintiff's pattern of frivolous lawsuits and the marked weakness of Plaintiff's

case.  The instant case is therefore "exceptional" under the meaning of Section 285.

Defendant makes three arguments in support of its contention that the instant case is

exceptional.  First, Defendant makes arguments that go to the motivation of Plaintiff in

bringing the instant suit, arguing that Plaintiff is a non-practicing entity that intended to

extract a nuisance-value settlement from Defendant.  (See ECF No. 64 at PageID 452.)

Second, Defendant argues that Plaintiff's case is substantively weak.  (See id.)  Finally,

Defendant argues that Plaintiff has engaged in litigation misconduct.  (See id. at PageID 449–

52.)  The Court finds that Defendant has shown by a preponderance of the evidence that all of these factors, when viewed together, merit an exceptional case determination and an award of fees.

<em>a)       Pattern of Frivolous Lawsuits</em>

There is significant evidence that Plaintiff has engaged in a pattern of engaging in frivolous patent lawsuits, and such pattern merits an exceptional case determination.  SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1350 (Fed. Cir. 2015).  Plaintiff's pattern of litigation therefore weighs in favor of an exceptional case determination.  Non-practicing entities such as Hawk may proceed in patent litigation as though they face little business risk from the loss of patent protection over a product or process, and in the instant case the '091 Patent "protected only [Hawk's] settlement receipts, not its own products."  Eon-Net v. Flagstar Bancorp, 653 F.3d 1314 (Fed. Cir. 2011).  In analyzing the instant case, the Court understands that

> [t]he boilerplate nature of [Plaintiff's] complaint, the absence of any reasonable pre-suit investigation, and the number of substantially similar lawsuits filed within a short time frame, suggests that [Plaintiff's] instigation of baseless litigation is not isolated to this instance, but is instead part of a predatory strategy aimed at reaping financial advantage from the inability or unwillingness of defendants to engage in litigation against even frivolous patent lawsuits.

Lumen View Tech., LLC v. Findthebest.com, Inc., 24 F. Supp. 3d 329, 336 (S.D.N.Y. 2014), aff'd, 811 F.3d 479 (Fed. Cir. 2016).

Plaintiff's Complaint bears indicia of a strategy of engaging in frivolous patent lawsuits.  Id.  Plaintiff's Complaint was brief and boilerplate, containing general allegations.  See id.; see also (ECF No. 1).  Plaintiff also clearly failed to engage in reasonable pre-suit investigation, as shown in its Complaint.  Id.  Plaintiff's Complaint contained no particularized allegations against Defendant, and attached a claim chart that could have been

attached to any suit against a company using a particular surveillance product.  (ECF No. 1 ¶ 24.)  The only indications that Plaintiff researched the suit before bringing the instant case is the description of Defendant as a party and a single advertisement that was attached to the Complaint that indicated that Defendant used a certain surveillance product.  (ECF No. 1 ¶¶ 3–5, see also ECF No. 1-2.)  Plaintiff indicates that it did not even know how many stores Defendant operated until the instant case was on appeal.  (ECF No. 90 at PageID 765.)

Plaintiff filed many suits, which is also an indication that Plaintiff engaged in a strategy of filing frivolous patent lawsuits.  See Lumen View Tech, 24 F. Supp. 3d at 336.  Defendants have presented evidence that Plaintiff brought 243 patent suits between 2013 and 2022.[6]  (ECF No. 65-6 at PageID 519.)

Plaintiff argues that its "average settlement amount" in suits regarding the '091 Patent "is over \$35,000.00, which is hardly a nuisance-value payment."  (ECF No. 90 at PageID 754.)  This argument is little more than a bare assertion, and Plaintiff offers no evidence to substantiate its claimed average settlement amount.  Plaintiff filed a chart with the Court that purports to show the outcomes of four cases in which "Defendant's Attorney engaged in litigation with the Plaintiff," but this chart is unaccompanied by any declaration of its authenticity.  (ECF No. 90-1.)  While the Court takes Plaintiff's assertion into account, it does little to rebut the actual evidence that Defendant has put forward.

Plaintiff argues that Defendant's data is inaccurate.  (Id. at PageID 764.)  Again, Plaintiff offers no more than a bare assertion and does not proffer evidence to the contrary.

---

[6] Of these cases, Plaintiff's data indicates that 235 settled.  (ECF No. 65-6 at PageID 519.)  Plaintiff's data also indicates that the "patent challenger won" in two cases, with one of those cases being the instant case and the other apparently being Hawk Tech. Sys., LLC v. Oaklawn Jockey Club, Inc., No. 6:15-CV-06037, 2015 WL 13813612, at *1 (W.D. Ark. Nov. 5, 2015).  (Id. at PageID 517.)  However, that case was dismissed without prejudice upon the joint motion of the parties.  (Hawk v. Oaklawn, 2015 WL 13813612, ECF No. 89.)  Plaintiff's data indicates that the remainder of the patent suits initiated by Hawk received non-merits dismissals as well.  (ECF No. 65-6 at PageID 519.)

Plaintiff also argues that most of the suits it filed between 2013 and 2022 were filed before the issuance of the '091 Patent in 2019 and should therefore be disregarded. (Id. at PageID 763.) Plaintiff's suits still show a pattern of consistently filing frivolous patent suits for the purpose of obtaining settlements. SFA Sys., 793 F.3d at 1350.

Plaintiff argues that its "pattern of enforcing its patent rights does not make losing the [instant] case exceptional." (Id. at PageID 757 (citing Checkpoint Systems v. All-Tag, SA, 858 F.3d 1371 (Fed. Cir. 2017)).) Plaintiff further asserts that "it has never been motivated by harassment or burdening a Defendant." (Id.) The evidence Defendant has actually proffered shows otherwise.

Plaintiff asserts that it is a practicing entity, and that it carries a line of equipment systems packages that are available on its website. (ECF No. 90 at PageID 758.) The link that Plaintiff provides to the Court redirects a visitor to a different URL that purports to offer the "randomly selected" visitor an opportunity to take a survey to win an "Apple iPhone 14 Pro." (Id.) Plaintiff does not offer any evidence accessible to the Court that it is, in fact, a practicing entity.

> b)      *Weakness of Plaintiff's Case*

Substantive weakness in a Plaintiff's case may also merit an exceptional case determination. See, e.g., Edekka LLC v. 3balls.com, Inc., No. 2:15-CV-541 JRG, 2015 WL 9225038, at *2 (E.D. Tex. Dec. 17, 2015). The substantive weakness of Plaintiff's litigation position in the instant case weighs in favor of an exceptional case determination.

Plaintiff's patent was presumptively valid, having been issued after the Supreme Court's decision in Alice. See Microsoft Corp. v. I4I Ltd. P'ship, 564 U.S. 91, 102 (2011); Alice Corp. Pty. v. CLS Bank Int'l, 573 U.S. 208 (2014). However, Plaintiff's patent was

"demonstrably weak on its face, despite the initial presumptions created when this patent was issued by the PTO." Edekka, 2015 WL 9225038, at *2–3.  Plaintiff's patent claims were clearly directed to "general abstract ideas—displaying images, converting them into a format, transmitting them, and so on." Hawk v. Castle, 60 F.4th at 1357.  Plaintiff's claims "recite conventional components . . . to perform the method." Id. at 1358.  It was clear to the Court that the '091 Patent's claims were directed toward unpatentable subject matter, and "no reasonable litigant could have reasonably expected success on the merits" in the instant case. Edekka, 2015 WL 9225038, at *3.

Plaintiff also "proffered completely untenable arguments to the Court" after Defendant filed a motion to dismiss under 35 U.S.C. § 101.  Id.  For instance, Plaintiff argued that all claim construction determinations must be made in the light most favorable to the Plaintiff without providing "any terms for claim construction" or showing "how the construction of any such claims would render the claims non-abstract." (ECF No. 44 at PageID 335.) Plaintiff explained in a hearing before the Court that "temporal and spatial parameters" were the inventive concept contained in the '091 Patent, when there is substantial case law holding that such data manipulation claims and uses of mechanical formulas are abstract.  (Id. at PageID 337–38.)  Hawk attempted to "create a factual dispute with respect to what was 'routine and conventional' at the time of the invention," when the Court was able to summarily find that "[i]t necessarily follows that if the '091 Patent does not disclose exactly how to achieve the end result, then the person having ordinary skill in the art . . . would be left to his or her own devices in order to utilize routine and conventional methods to achieve those results." (Id. at PageID 340.)

Plaintiff argues that the United States Patent and Trademark Office "has cleared" four versions of the '091 Patent.  (ECF No. 90 at PageID 763.)  Plaintiff further argues that it "ceased all efforts to enforce [the '091 Patent] during the time of Appeal" and that it "modified" subsequent versions of the '091 Patent "to address each and every one of the issued raised by this [C]ourt."  (Id. at PageID 763.)  Both arguments are irrelevant, addressing behavior that Plaintiff engaged in only after the Court entered an order dismissing the instant case.  They do not show the strength or weakness of the patent, nor do they prove that Plaintiff staked out a reasonable litigating position in the instant case.

While the instant case was very weak, and subsequent modifications to the patent do not serve to strengthen the case at bar, the Court will take into account the presumptive validity of the '091 patent in fashioning a remedy that is proportional to Plaintiff's misconduct.  (Infra, III.d.)

> c)    *Plaintiff's Conduct*

Plaintiff's conduct during settlement negotiations also weighs in favor of an award of exceptional case fees.  In an email sent on March 25, 2021, Plaintiff's counsel communicated to Defendant's counsel that it would likely "pursu[e] other members" of the Tennessee Grocers & Convenience Store Association if Defendant failed to agree to a settlement.  (ECF No. 64-1 at PageID 461.)  Defendant describes this email as a "threat[] of collateral harm." (ECF No. 64 at PageID 451.)  Plaintiff's counsel sent Defendant's counsel an additional email following Plaintiff's appeal of this Court's decision to dismiss the instant case, in which Plaintiff's counsel wrote,

> Castle has already expended far greater sums on this case than the cost of any
> infringement damages or a settlement, so Castle's expenditures at this point are
> purely chasing a highly uncertain chance at recouping some of its earlier

investment (in Vegas, this is a known unsuccessful wagering strategy called chasing your losses).

(ECF No. 64-2 at PageID 463.)  Defendant describes this email as "taunting."  (ECF No. 64 at PageID 451.)

Plaintiff's conduct was impolite and "unprofessional."  Oplus Techs., Ltd. v. Vizio, Inc., 782 F.3d 1371, 1373 (Fed. Cir. 2015).  "The lawyer's duty to act with reasonable diligence does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect."  Tenn. R. Sup. Ct. 1.3 n. 1.  When viewed in a vacuum, Plaintiff's behavior during settlement negotiations did not rise to a sanctionable level.  See, e.g., Oplus Tech, Ltd. v. Vizio, Inc., 782 F.3d 1371, 1374–75 (Fed. Cir. 2015) (making an exceptional case determination on the basis of a plaintiff's behavior when that party made misrepresentations to the USPTO, abused the discovery process to increase litigation costs for the opposing party, and intentionally delayed litigation, such that even the plaintiff's counsel agreed that the misconduct was severe).  When the instant case is viewed as a whole, with the weakness of Plaintiff's case and Plaintiff's pattern of lawsuits taken into account, however, Plaintiff's conduct becomes another factor in favor of finding the instant case "exceptional."

The Court has allowed Plaintiff and Plaintiff's counsel to file communications that provide the context for these emails.  (ECF No. 98 at PageID 936.)  Weide & Miller filed over 400 pages of emails with the Court "that reflect the nature and tone of the parties' other exchanges," without directing the Court to any particular email or set of emails that provide context for Plaintiff's conduct.  (ECF No. 102 at PageID 942.)  Despite Weide & Miller's lack of direction, the Court has reviewed their filing briefly and could not readily locate communications that alter the Court's findings regarding the settlement negotiations at issue.

See <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir.1991) ("[J]udges are not like pigs, hunting for truffles" buried in the record). The Court has reviewed the emails Plaintiff and Henderson Dantone filed with the Court more thoroughly. (ECF No. 105.) The Court likewise finds that Henderson Dantone's emails do not change the substance of the settlement emails at issue.

The context of the settlement emails therefore does not impact the Court's finding that Plaintiff's conduct is a factor that is in favor of finding the instant case "exceptional."

          *d)*    *Conclusion*

Defendant's motion for exceptional case attorney fees under Section 285 is therefore **GRANTED**. Defendant has shown by a preponderance of the evidence that Plaintiff has engaged in a pattern of engaging in frivolous patent lawsuits, that Plaintiff's case was exceptionally weak, and that Plaintiff's conduct was inappropriate. Defendant is therefore entitled to attorney fees. <u>Octane Fitness</u>, 572 U.S. at 557. Such fees are only assessed against Hawk, and not against Hawk's counsel. <u>See</u> <u>Phonometrics</u>, 64 F. App'x 219 at 222.

If a party is to be awarded attorneys' fees for an "exceptional" patent law case, "[t]he amount of the award must bear some relation to the extent of the misconduct." <u>In re Rembrandt Tech. LP Patent Litig.</u>, 899 F.3d 1254, 1278 (Fed. Cir. 2018) (quoting <u>Rambus Inc. v. Infineon Techs. AG</u>, 318 F.3d 1081, 1106 (Fed. Cir. 2003)). While the instant case was weak, Plaintiff did have a presumptively valid patent that was issued after the Supreme Court's decision in <u>Alice</u>. <u>See</u> <u>Microsoft</u>, 564 U.S. at 102. The Court therefore awards Defendant its fees only from the point at which Defendant filed its Motion to Dismiss. From that point, it should have been abundantly clear to a reasonable party that Plaintiff's case was exceptionally weak, and it was from that point that this case became "exceptional" such that

an award of attorney fees is merited.  It appears to the Court that Finnigan billed Castle $15,826 before it filed the Motion to Dismiss.  (ECF No. 93-1 at PageID 834.)  Evans Petree billed Castle $922.50 for that time period.  (ECF No. 93-2 at PageID 875.)   The Court will therefore reduce Defendant's fee award by a total of $16,748.50 to reflect the extent of misconduct.

2.     *Section 1927 Attorney Fees*

Section 1927 provides the Court with a statutory basis to award attorney fees when "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . multiplies the proceedings in any case unreasonably and vexatiously."  28 U.S.C. § 1927. "Section 1927 sanctions are warranted when an attorney objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'"  Red Carpet Studios, 465 F.3d at 646 (citing In re Ruben, 825 F.2d 977, 983 (6th Cir.1987)).  Section 1927 "applies to attorneys, not the parties they represent."  Davis, 782 F. App'x at 457.

The Court finds that Section 1927 fees are not appropriate in the instant case.  That the instant case did not have merit is not a sufficient basis for attorney fees pursuant to Section 1927.  Kidis v. Reid, 976 F.3d 708 (6th Cir. 2020).  Plaintiff's counsel did not engage in a pattern of obstructive behavior or behavior that caused unreasonable "additional expense" to Defendant.  In re Ruben, 825 F.2d at 983.  Plaintiff's counsel met deadlines, filed motions in a timely manner, and generally did not obstruct the instant proceedings through defiance or numerous filings.  Plaintiff's counsel brought the instant case to enforce a presumptively valid patent.  See Microsoft Corp. v. I4I, 564 U.S. at 102.  Defendant fails to make a showing that

16

*Plaintiff's counsel*, specifically, engaged in conduct that resulted in additional expense to Defendant and therefore warrants sanctions.

Defendant's Motion for attorney fees under Section 1927 is therefore **DENIED**.

3.     *Inherent Powers Sanctions*

Inherent powers sanctions are not appropriate in the instant case. "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers v. Nasco, 501 U.S. 32 (1991). Plaintiff did not engage in vexatious, oppressive, or wanton conduct as those terms legally apply in the instant case. See Metz v. Unizan Bank, 655 F.3d 485, 487 (6th Cir. 2011). For the Court to exercise its inherent powers, the Court must find that Defendant engaged in some wrongdoing beyond pursuit of a meritless claim. BDT Prod., Inc. v. Lexmark Int'l, Inc., 602 F.3d 742, 753 (6th Cir. 2010). The Court does not find any wrongdoing above and beyond the conduct it has already sanctioned under Section 285. Finally, as the Court found above, while Plaintiff's conduct in the course of settlement negotiations in the instant case was unprofessional, it was not independently sanctionable.

Defendant's Motion for sanctions pursuant to the Court's inherent powers is therefore **DENIED.**

4.     *Calculation of Reasonable Fees*

The Court has examined all documents Defendant has filed in support of its position that $134,371.50 represents reasonable attorney fees. (ECF Nos. 64-3, 65-11, 93-1–7.) Given the experience and work of the individuals involved in litigating Defendant's case, the Court adjusts Defendant's attorney fees for the reasons set forth below before granting Defendant's Motion.

a)   *Reasonable Hourly Rate*

(1)   *As to attorneys*

Plaintiff contends that local patent attorneys could handle the instant case for much lower rates.  (Id. at PageID 643–44.)  "Ordinarily, courts look to '[rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Hadix v. Johnson, 65 F.3d 532, 536 (6th Cir. 1995) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).  "There is a presumption in favor of the community market rates."  Martinez v. Blue Star Farms, Inc., 325 F.R.D. 212, 221 (W.D. Mich. 2018).

Defendant's counsel Finnigan falls under an exception to community market rates for the hiring of an "out-of-town specialist."  See Hadix v. Johnson, 65 F.3d 532, 535 (6th Cir.1995) (citing Chrapliwy v. Uniroyal, Inc., 670 F.2d 760, 768–69 (7th Cir.1982)); Louisville Black Police Officers Organization, Inc. v. Louisville, 700 F.2d 268, 277 (6th Cir.1983)).  Specialized attorneys in fields such as patent law "tend to charge more for their services and tend to be found in larger cities where the cost of litigation is more expensive."  Chrapliwy, 670 F.2d at 769.  "[C]ourts must determine (1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation."  Hadix, 65 F.3d at 535 (citing Chrapliwy, 670 F.2d at 768–69).  "A corollary of this rule is that judges may question the reasonableness of an out-of-town attorney's billing rate if there is reason to believe that competent counsel was readily available locally at a lower charge or rate."  Id. (citing Chrapliwy, 670 F.2d at 769.).

The Court finds that hiring out-of-town specialists was reasonable in the instant case. Finnegan's attorneys possess expertise in patent law, and their efficient resolution of the

instant case before both this Court and the Sixth Circuit is indicative of that expertise.  See Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc., 707 F. Supp. 2d 737, 759 (N.D. Ohio 2010), as corrected (Apr. 13, 2010).  Patent law is "by its very nature, national and not necessarily regional in scope."  iLOR, LLC v. Google, Inc., 2009 WL 3367391, at *5, (E.D.Ky. Oct. 15, 2009); see also Saint-Gobain Autover, 707 F. Supp. 2d at 759; Swapalease, Inc. v. Sublease Exchange.com, Inc., 2009 WL 204408 (S.D.Ohio Jan. 27, 2009).  Plaintiff has submitted an expert declaration to the Court that a "relatively small number of Memphis lawyers" do patent litigation work, and that Finnigan's rates were reasonable for a firm of its size and with its specialties.  (ECF No. 65-11 at PageID 532.)  It was therefore reasonable for Defendant to retain Finnigan.

Defendant has submitted a declaration confirming that it paid the fees charged.  (ECF No. 93-3 at PageID 908; see Junker v. Eddings, 396 F.3d 1359, 1365 (Fed. Cir. 2005) ("[T]he amount the client paid the attorney is one factor for the court to consider in determining a reasonable fee.").)  Defendant also submits the American Intellectual Property Law Association Report of the Economic Survey 2021, which shows that the rates charged by Defendant's counsel in the instant case are in line with national averages for intellectual property firms employing more than 150 attorneys.  (ECF No. 93-4 at PageID 911–12; see also View Eng'g, Inc. v. Robotic Vision Sys., 208 F.3d 981, 987-88 (Fed. Cir. 2000) (reliance on surveys, such as AIPLA, held appropriate to demonstrate that attorneys' rates "are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.").)  The Court has also specifically considered Mr. Hasford's status as an equity partner at Finnigan in finding Mr. Hasford's rates reasonable.  Defendant's fees calculation was reasonable as to its attorneys.

(2)    *As to Non-Attorneys*

Plaintiff expresses two concerns about the qualifications of Finnigan's staff utilized to work on the instant case. Plaintiff notes that one individual who worked the case, Mr. Ochiana, was a law student, not a barred lawyer. (ECF No. 82 at PageID 640–41.) Plaintiff also argues that "extremely high" rates were billed for support staff. (Id. at PageID 641–42.)

Courts may award fees for non-attorneys. Cleo D. Mathis & Vico Prods. Mfg. Co. v. Spears, 857 F.2d 749, 759 (Fed. Cir. 1988). In the instant case, Defendant has submitted a declaration attesting to the qualifications Mr. Ochiana, who was a registered patent agent and holds a Ph.D. in addition to being a law student, and who billed accordingly. (ECF No. 93-7.) The Court finds that the rates charged for Mr. Ochiana's services were reasonable considering his credentials and experience. See Hadix, 65 F.3d at 535.

Finnigan's Letter of Engagement was clear regarding its use of support staff and their fees. (ECF No. 93-5.) The Court notes, however, that two "case managers" at Finnigan billed at, or at close to, the highest advertised rate for support staff. Ms. Eaddy performed 4.6 hours of work at a bill rate of $410 per hour and 41.9 hours of work for $425 per hour. (ECF No. 93-1 at PageID 832.) Mr. Esper performed 1.4 hours of work at a bill rate of $425 per hour. (Id. at PageID 831–32.) "Legal assistant" Ms. Joyner also performed 0.4 hours of work at a bill rate of $295 per hour. (ECF No. 93-1 at PageID 833.) This represents a total amount of $20,801.50 billed by Finnigan to Defendant for 48.3 hours of work by support staff. The Court has not received evidence that any of Finnigan's support staff has any specialized skill, nor has any representation be made that these individuals hold law degrees, and the work they performed appears to be fundamentally paralegal work. (See, e.g., Id. at PageID 835–36 (Ms.

Eaddy performed such tasks as ensuring that Defendant's response brief conformed with local rules and finalizing documents for filing).)

Weide & Miller has submitted materials that indicate that *attorneys* in the Memphis area routinely bill at lower rates.  (ECF Nos. 106-7; 106-8.)  Mr. Carter's declaration concludes that Defendant's fees for support staff were excessive based on his extensive experience and a thorough review of Defendant's billing document.  (See generally ECF No. 106-1.)  Mr. Carter's declaration asserts that "firms charge between $175.00 and $290.00 per hour for work performed by paralegals, with most common rates being at or below $225.00 per hour."  (ECF No. 106-1 at PageID 1384 (aggregating cases).)  While the Court finds Mr. Carter's declaration and conclusions persuasive based on the evidence presented, it must be acknowledged that Mr. Carter represents Weide & Miller in this matter.  (ECF No. 68.)

The Court finds Plaintiff's billed fees for support staff were excessive.  The Court considers the prevailing rate in the local community for support staff and will adjust Defendant's fee award downward to reflect that rate.   See, e.g., E.E.O.C. v. Whirlpool Corp., No. 3:06-CV-0593, 2011 WL 3321291, at *3 (M.D. Tenn. Aug. 2, 2011) (adjusting paralegal fees downward to match the prevailing community rate).  The Court finds a rate of $205 per hour reasonable as a middle point among the paralegal rates submitted to the Court.  (See ECF No. 106-2 (paralegal billed at $175 per hour, the lowest rate in Weide & Miller's exhibits); ECF No. 106-5 (paralegal billed at $230 per hour, the highest rate in Weide & Miller's exhibits for a non-senior paralegal)); see also Fox v. Vice, 563 U.S. 826, 238 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection").

Finnigan billed Defendant $20,801.50 for 48.3 hours of work by support staff.  48.3 hours of work by support staff at a rate of $205 per hour represents $9,901.50 in work at the prevailing rate in the community.  The Court will therefore reduce Defendant's attorney fee award by the difference between those figures, $10,900.

b)       *Reasonable Number of Hours*

Plaintiff makes several arguments relating to the sufficiency of Defendant's documentation of its counsel's hours worked.  Defendant remedied those deficiencies in Reply.  Plaintiff argues that Defendant failed to file its Letter of Engagement.  (ECF No. 82 at PageID 640.)  Defendant has since filed its Letter of Engagement.  (ECF No. 93-5.)  Plaintiff additionally argues that Castle initially filed with the Court a spreadsheet that lacked indicia that it was a professional document.  (ECF No. 82 at PageID 640.)  Defendant has since filed charts and invoices that are on law firm letterhead and reflect a systematic contemporaneous calculation of hours worked on the instant case.  (ECF No. 93-1.)  Plaintiff contends that Defendant initially filed a declaration that failed to account for the hours billed by local counsel separately from those billed by their out-of-town firm.  (ECF No. 82 at PageID 640.)  Defendant has since filed a supplemental declaration and supplemental documentation from local counsel.  (ECF No. 93-2.)  The Court considers Defendant's extensive documentation of its counsel's hours worked, including two declarations accompanied by detailed records of what work was billed, to be sufficient to support its argument that the hours that have been billed in the instant case are reasonable.

Plaintiff argues that Defendants have not documented their hours with sufficient specificity because they engaged in block billing.  (ECF No. 82 at PageID 642–43.)  "[S]o long as the description of the work performed is adequate, block-billing can be sufficient."

Smith v. Serv. Master Corp., 592 F. App'x 363, 371 (6th Cir. 2014).  In the instant case,

Defendant has documented work performed in the block billed hours in fair detail, so

Plaintiff's argument has no merit.  (See, e.g., ECF No. 93-1 at PageID 850 (billing 7.9 hours

for the following tasks: "Consider Plaintiff's claim chart and non-infringement positions;

confer with J. Hasford on the same; draft non-infringement contentions and provide same to J.

Hasford for review, including comments on the same.")  Plaintiff also argues that Defendant's

work was duplicative and its hours excessive.  (ECF No. 82 at PageID 642–43.)  Plaintiff

points the Court to a single time entry for considering relevant prior art that was not necessary

for the instant case as excessive.  (Id.)  The entry that the Plaintiff points to specifically lists

the work performed as "Consider[ing] prosecution history and relevant prior art and work[ing]

on draft technology tutorial; confer[ing] with J. Hasford regarding same" for eight hours.

(ECF No. 93-1 at PageID 835.)  It appears to the Court that the consideration of relevant prior

art was part of a wider inquiry into the background of the patent and was reasonable.  The

Court, in examining Defendant's counsel's billing records, does not find an instance of

duplicative fees.

　　　　Plaintiff argues that Defendant should not be awarded "fees for fees," as the claimed

fees for bringing the instant Motion amount to one-third of the fees for the entire case.  (ECF

No. 82 at PageID 642.)  However, attorneys are generally entitled to fees incurred in preparing

and litigating an attorney fee motion after the underlying case has closed.  See Cook v.

Greenleaf Twp., No. 16-14060, 2020 WL 5422304, at *4 (E.D. Mich. Sept. 10, 2020), aff'd

sub nom. Cook v. Greenleaf Twp., Michigan, 861 F. App'x 31 (6th Cir. 2021) (citing Coulter

v. State of Tenn., 805 F.2d 146, 151 (6th Cir. 1986)).  Plaintiff's contention that the instant

Motion could become a second litigation has no merit.  After addressing the complexities of a

potential conflict (ECF No. 74) and holding a single hearing (ECF No. 97), the Court is satisfied that the instant Motion has been resolved as efficiently as possible.

### IV.    Conclusion

For each of the reasons set forth above, Defendant's Motion for Attorney Fees is **GRANTED**.  The Court awards Defendant $106,723.  This represents Defendant's billed total of $134,371.50, less $16,748.50 for work performed prior to the date Defendant filed its Motion to Dismiss and $10,900 for excessive support staff fees.  Such fees are assessed solely against Plaintiff and not against Plaintiff's counsel.

**SO ORDERED**, this 8th day of September, 2023.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE